**H L H PRODUCTS, DIVISION OF HUNT OIL CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 16222.

United States Court of Appeals Seventh Circuit.

June 6, 1968.

Rehearing Denied July 8, 1968, en banc.

D. C. Duck, William E. Plane, Thomas W. Sinex, Indianapolis, Ind., for petitioner; Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., of counsel.

Marcel Mallet-Prevost, Asst. General Counsel, Robert A. Giannasi, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Atty., N.L.R.B., for respondent.

Before KNOCH, Senior Circuit Judge, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

This case is before us on petition of HLH Products, Division of Hunt Oil Co., to review an order of the National Labor Relations Board. The board petitioned for enforcement.[1]

The company operates a number of canneries. The plant involved here is located at Muncie, Indiana. It has normally packed tomatoes from August to early October and potatoes thereafter, depending upon availability, until some date in the spring.

Local 135, Teamsters, was bargaining agent for production, maintenance, and warehouse employees. This unit included some 100 workers. There was a year-round work force and additional tempo-

1. The board decision is reported at 164 N.L.R.B. No. 61.

rary help was usually employed during the tomato season.

On February 4, 1965, the company closed the plant and terminated all but a few employees. In July, however, it began to recruit for the tomato season, and proceeded to operate. It sought workers through the Indiana Employment Security Division. It did not directly recall its old employees in the bargaining unit, although it arranged with the Division to send letters inviting them to apply at the Division office. It continued in operation and packed potatoes, starting in October.

Approximately 600 applicants were hired by the company, including some former employees. Sixty to 65 out of the 100 employees who were in the unit in February, 1965, were not reemployed. A number of these applied to the company but were rejected.

The trial examiner made findings and concluded therefrom (1) that the company violated section 8(a) (3) and (1) of the Act by refusing to recall and reemploy 65 employees because of their union activity; (2) that it violated section 8(a) (5) and (1) by refusing to bargain on and after July 23, 1965; and (3) that it violated section 8(a) (1) by coercively interrogating employees about their union activity and by threatening to discontinue operations rather than to operate a unionized plant.

The board adopted the findings and conclusions of the trial examiner, except with respect to certain reasoning concerning the refusal to bargain and the justification for a bargaining order. The order here under review, includes, among others, a requirement that the company bargain collectively with the union upon request, as well as offer reinstatement and replace lost earnings.

1. *The finding of an unfair labor practice by discrimination on account of union activity.*

It is clear that less than 40% of the employees in the bargaining unit on February 4, 1965 were put back to work in August. The company contends that the failure to employ others did not result from unlawful discrimination. It appears to be the company view that Mr. Hunt decided in February to close the Muncie plant because it was losing money; that he made unsuccessful efforts to sell; that he decided to operate again so that the plant would be more readily salable; that management doubted the desire of its former employees to return after five months and decided it would be easier to recruit through the state employment service; that the former employees who were interested in working had an equal chance with all other prospects; that failure of any former employee to obtain a job was fortuitous, due either to not being called by the state employment service in random selection from its pool of prospects, or to the fact that an appropriate job was not available when a former employee applied at the plant.

The record contains a wealth of evidence that the company had been aggressive in its opposition to the union in the past. There was testimony that management promoted a decertification petition in 1964, and sent representatives to tell employees individually and in groups that the plant would be closed unless the union were voted out. The union won the election in July, 1964, by a vote of 65 to 25.

There was testimony that supervisors remarked in February, 1965, that the plant was closed on account of the union, and at the time of reopening that union adherents were not wanted. In July and August, the union's business representative wrote the company asking that the old employees be recalled, but these requests were denied.

The trial examiner pointed out that the former employees appeared to be a competent work force and that the natural thing for the company to do would have been to follow its former practice and recall its employees; that many persons referred by the state employment service worked a day or less, but that the company did not hire old and reliable employees who applied at the plant; that

anti-union statements were made to several. He said he was unconvinced by the company's explanation of the closing and reopening.

█ The trial examiner made the following findings, among others:

"I find from the foregoing circumstances, evaluated against Respondent's sponsorship of a decertification petition and its threats before the July, 1964 election to close the Muncie plant if the Union won the election, that Respondent failed to recall and re-employ the workers employed before the shut down of February 2, 1965, because it knew that most of them were union supporters and it wanted to keep the Union out of the plant.

\* \* \* \* \* \*

"In these circumstances, and as the closing of the plant approximately 6 months after the Union won a Board election was preceded by anti-union threats predicting such action and was followed upon reopening by a hiring procedure which ignored the Union's bargaining rights and eliminated a majority of employees who voted in the election, I find, as alleged by the General Counsel, that Respondent 'feigned' a permanent closing of the plant on February 4, 1965, as a device to get rid of the Union and its supporters.

\* \* \* \* \* \*

"By refusing to bargain with the Union on the reemployment of its old employees, and by making their reemployment depend on referral by the Division—which referral was highly uncertain because it depended upon a random selection of cards—Respondent impressed upon them the futility of union representation and drastically weakened the Union's strength in the plant."

The findings are supported by substantial evidence in the record considered as a whole.

2. *The finding of refusal to bargain and the order to bargain upon request.*

There were demands for bargaining made by the union and rejected by the company in July and August, 1965. The charge on which the complaint was based was filed November 2, 1965 and asserted unfair labor practices under section 8(a) (1) and (3), describing the discriminatory refusal to recall on account of support of the union. An amended charge was filed April 18, 1966, adding section 8(a) (5) and describing the refusal to bargain in July and August "and at all times thereafter". Obviously the specific demands and refusals were more than six months before April 18.

The trial examiner handled the sec. 10(b) issue on the theory that the union had asked to bargain about rehiring and the company continued hiring in disregard of the union after October 19, the critical date for a charge filed April 18. The board found "it unnecessary to rely upon the continuing nature of the Union's demand, as the Trial Examiner did by considering the Respondent's October hiring policy in itself a rejection of bargaining".

The board based its 8(a) (5) finding on the discriminatory recall policy, saying

"This activity in itself constituted a violation not only of section 8(a) (1) and (3) as alleged and as found by the Trial Examiner, but also, by its very nature, a refusal to bargain. Respondent by this unlawful discrimination made clear that it sought to avoid its bargaining obligation.—The Board is not prevented from considering and deciding that conduct violative of one section of the Act is also violative of another section simply because that section was not specifically alleged."

█ Apart from whether the discriminatory hiring, charged to be an 8(a) (3) and (1) unfair labor practice, could also be found to be a refusal to bargain and an 8(a) (5) unfair labor practice, though not asserted in the original, and timely, charge, the board assert-

ed this justification for including a bargaining order:

"An affirmative order would in any event be required here to restore the status quo ante and to remedy the 8(a) (1) and (3) violations we have found because the Respondent's conduct clearly evinces a rejection of its duty to bargain collectively as evidenced by the flagrant 8(a) (1) and (3) conduct which we have found."

Both lines of reasoning asserted by the board make sense in the circumstances of this case. We choose to rest our decision, enforcing the order, including the requirement to bargain, upon the latter.

3. *The finding of an unfair labor practice by coercive interrogation and threats.*

█ The trial examiner and board found that the company violated sec. 8(a) (1) of the act by "Chester Miller's interrogation of Pollard about his union affiliation, and by Albert Glass' statement to Cooper that the plant would operate only if the Union was kept out".

The company confines its challenge to the Miller episode, saying that Pollard's testimony is unworthy and inadequate to support the finding because "indefinite, contradictory, vague, uncertain, and capricious".

The trial examiner stated: "Pollard was confused about dates and did not recall Miller's name or whether Miller came from Texas or Florida. The record shows, however, that Miller was the acting plant manager just before the tomato season started. As Pollard described his conversation with Miller and the Glasses with particularity and impressed me as a reliable witness, I credit his testimony concerning these conversations." Miller is manager of a company plant in Florida and was sent to Muncie for three weeks to assist in opening the plant. The company headquar'ers are in Texas. Pollard said he was referred to the plant manager when he asked for work.

We have read the record of Pollard's testimony, as well as the testimony in conflict and find therein no reason to say that the examiner who saw and heard the witnesses could not or should not have believed what he said.

The board's order will be enforced.

KNOCH, Senior Circuit Judge. (dissenting in part).

With the sole exception of enforcement of the bargaining order, I concur in the opinion of the majority. I am of the opinion that the petitioner company must have been misled by the complaint. It is unreasonable, in the circumstances of this case, to expect the company to have anticipated that the allegations respecting § 8(a) (1) and (3) would be the basis of a finding that § 8(a) (5) had been violated.

I think the majority has recognized that position in choosing instead to rely on the Board's justification of a bargaining order here as an appropriate remedy for the § 8(a) (1) and (3) violations.

However, absent a finding of a § 8(a) (5) violation, I believe that a bargaining order is an appropriate remedy only:

"In those exceptional cases where the employer's unfair labor practices are so outrageous and pervasive and of such a nature that their coercive effects cannot be eliminated by the application of traditional remedies * *." NLRB v. S. S. Logan Packing Co., 4 Cir., 1967, 386 F.2d 562, 570.

See also NLRB v. River Togs, Inc., 2 Cir., 1967, 382 F.2d 198; NLRB v. Flomatic Corp., 2 Cir., 1965, 347 F.2d 74, 77.

I cannot agree that this is such an exceptional case that a bargaining order is justified as an appropriate remedy for the § 8(a) (1) and (3) violations which were found.